1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ANTHONY RICHARDO TURNER,

11             Plaintiff,                    No. CIV S 07-0022 GGH P

12        vs.

13   OFFICER SPENCE, et al.,                 ORDER

14             Defendants.
     _____/

15

16   Background

17             By Order, filed on May 11, 2007, this court found plaintiff's amended complaint,[1]

18   filed on March 29, 2007, appropriate for service upon ten (10) defendants: Woodland Police

19   Officer Luke A. Spence; and the following Yolo County Sheriff's Department employees:

20   Commander Ed Prieto; Lieutenant (Lt.) T. Day; Sergeant (Sgt.) D. Hunter; Deputy Chaud;

21   Deputy Gibson; Deputy Jamolodin; Deputy Duvall; Deputy Madden; as well as, Registered

22   Nurse (R.N.) Tony.

23

24   _____

25        [1] Plaintiff's original complaint was filed on January 4, 2007.  By Order, filed on January
     19, 2007, the court directed plaintiff to file a completed affidavit for in forma pauperis status.
     After doing so, plaintiff then filed an amended complaint, which superseded the original
26   complaint.  See Order, filed on May 11, 2007.

                                              1

1        By Order, filed on June 5, 2007, the court directed a Mr. Purcell,[2] not a defendant,

2   pursuant to the All Writs Act, 28 U.S.C. § 1651(a), within twenty days, to respond to plaintiff's

3   May 23, 2007, filing wherein plaintiff averred that he was being denied copies of his amended

4   complaint which were necessary for service of process.  The court's docket does not indicate that

5   anyone ever responded to the order and the Yolo County Sheriff's Dept. is cautioned in future

6   not to disregard any court order.  The court will not sanction Mr. Purcell or the defendant sheriff

7   (aka "Commander Prieto") at this time, but will note that the show cause order was not properly

8   discharged.  When plaintiff returned his documents without the full complement of copies, the

9   court elected to provide the remaining necessary copies to streamline the process in its service

10  order.  See Order, filed on July 9, 2007, n. 1.

11       By Order, filed on October 3, 2007, Judge Karlton related two other cases,

12  formerly No. CIV S 07-0078 GEB CMK P and No. CIV S 07-1362 LEW DAD P, now

13  denominated No. CIV S 07-0078 LKK GGH P and No. CIV S 07-1362 LKK GGH P, to No. CIV

14  S 07-0022 LKK GGH P.  By Order, filed on October 11, 2007, the undersigned directed

15  defendants to file their responsive pleading within twenty days, and defendants Prieto, Day, Chan

16  (corrected from the misspelling "Chaud" by defendants' counsel), Duvall, Madden, Hunter and

17  Gibson, filed their answer on November 1, 2007. [3]  The parties having consented to the

18  jurisdiction of the magistrate judge for all further proceedings in this case, by Order,[4] filed on

19  April 3, 2008, this matter was reassigned for all purposes, including trial and entry of final

20  judgment, to the undersigned, now denominated No. CIV S 07-0022 GGH P.

21  \\\\\

---

[2] Or any other person the sheriff or his legal counsel designated as appropriate.

[3] See concurrently filed Order re: unserved or non-answering defendants.

[4] The undersigned observes that, in addition to the consent forms signed and filed by the parties noted in the Order, filed on April 3, 2008, reassigning this matter, the voluminous case docket of this action indicates plaintiff had originally consented to the jurisdiction of the undersigned earlier in a signed consent form filed on January 9, 2007 (#5).

1      Pending before the court in No. CIV S 07-0022 GGH P are numerous

2  requests/motions brought by the plaintiff: 1) two inapposite "petitions for writ of

3  mandate/mandamus," filed by plaintiff on June 15, 2007 (#17), and on October 30, 2007 (#38),

4  both of which will be disregarded; 2) plaintiff's request for status report, filed on July 9, 2007 (#

5  20), which will be denied as moot;[5] 3) plaintiff's inapposite motion for "expansion of the

6  record," filed on August 24, 2007 (#23), which will be denied.

7      4) Plaintiff's request for production of documents, filed on August 29, 2007 (#

8  24), and his first set of interrogatories served on defendant Spence, filed on March 21, 2008

9  (#69), neither of which document should have been filed until such time as plaintiff  became

10  dissatisfied with a response to the requests/interrogatory and intended to seek relief from the

11  court pursuant to the Federal Rules of Civil Procedure: discovery requests between the parties

12  shall not be filed with the court unless, and until, they are at issue.  These requests/interrogatories

13  will be disregarded, although by Order, filed on October 12, 2007 (# 33), defendants were

14  directed to serve their responses to plaintiff's previously served requests for production of

15  documents.

16      5) As to plaintiff's motions for appointment of counsel, filed on October 23, 2007

17  (# 36), and on February 4, 2008 (# 60): the United States Supreme Court has ruled that district

18  courts lack authority to require counsel to represent indigent prisoners in § 1983 cases.  Mallard

19  v. United States Dist. Court, 490 U.S. 296, 298 (1989).  In certain exceptional circumstances, the

20  court may request the voluntary assistance of counsel pursuant to 28 U.S.C. § 1915(e)(1).  Terrell

21  v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991); Wood v. Housewright, 900 F.2d 1332, 1335-36

22  (9th Cir. 1990).  In the present case, the court does not find the required exceptional

23  circumstances.  Plaintiff's requests for the appointment of counsel will therefore be denied.

24  \\\\\

25

26      [5] See concurrently filed Scheduling Order.

3

1    6) Plaintiff's inapposite requests for entry of default, filed on November 9, 2007

2  (#41), and on November 12, 2007 (#42), as well as the putative petition for writ of habeas

3  corpus, filed on November 16, 2007 (#45), which will be disregarded; 7) plaintiff's inadequately

4  supported and inapposite motion for a default judgment, filed, on November 26, 2007 (#46), will

5  be denied; 8) plaintiff's four motions to compel discovery, filed on November 28, 2007 (#49), on

6  December 20, 2007 (#53), on February 4, 2008 (#59), and on February 15, 2008 (#63) (see

7  discussion below).

8    9) As to plaintiff's requests for appointment of an investigator, filed on November

9  28, 2007 (#50), and on March 4, 2008(# 68), the court informs plaintiff that the expenditure of

10  public funds on behalf of an indigent litigant is proper only when authorized by Congress.

11  Tedder v. Odel, 890 F.2d 210 (9th Cir. 1989).  The in forma pauperis statute does not authorize

12  the expenditure of public funds for investigators.  See 28 U.S.C. § 1915.  Therefore, these

13  requests will be denied.

14    10) As to plaintiff's "motion for preliminary and/or permanent injunction and

15  TRO," filed on January 28, 2008 (#55), to which defendants filed their opposition,[6]  both on

16  February 21, 2008 (#64), and on February 22, 2008(#65),[7] see discussion below.

17  Amended Complaint

18    Plaintiff alleges that on December 11, 2006, defendant Officer Spence subjected

19  him to excessive force in arresting plaintiff, twisting plaintiff's wrists and left arm and slamming

20  the left side of plaintiff's face into a concrete wall.  Amended Complaint (AC), p. 8.  Plaintiff

21  claims that his circulation was cut off and his wrists went numb when he was handcuffed by

22  defendant Spence.  Id.  Plaintiff avers that he was arrested without probable cause but as a result

23  

24    [6] Defendants were directed to file a response pursuant to the Order, filed on February 4, 2008.

25    [7] As defendants' second opposition filing, without expressly so stating, appears to be an amended and more complete opposition, the court will consider only the opposition filed on Feb. 22, 2008 (#65).

26

of racial profiling, that Spence threatened to taser plaintiff even after plaintiff informed Spence

he was a "disabled cardiac patient." Id.  According to plaintiff, defendant Spence called him

"discriminatory names," and refused to read plaintiff his Miranda rights, claiming also that he

was engaged in no unlawful conduct when arrested, nor did he resist arrest.  Id.  Plaintiff

contends that Spence searched him without contacting plaintiff's parole agent and without

plaintiff's consent, removing various items of personal property worth $1,020.00, including $120

in cash; two gift cards with a total value of $200; watches with a value of $400, and other items.

AC, pp. 8-9.  Plaintiff contends that defendant Spence, after dropping the items on the ground in

the rain, scooped the items into a paper bag that plaintiff never saw again.  Id. at 9.  Plaintiff

avers that he has been subjected to a deprivation of his property by defendant Spence without due

process and that he was never given a receipt for the items.  Id.

Plaintiff claims that defendant Spence "unlawfully interrogated" plaintiff in the

back of his patrol car for "1 / 2 hours [sic],"[8] as he drove around Woodland without taking

plaintiff to the Woodland Police Station to be charged or booked, as plaintiff requested, and

despite plaintiff's having refused to make a statement, and having asked to be able to make a call

for his lawyer.  AC, pp. 9-10.  On the detour away from the police station, defendant Spence told

plaintiff of having "busted" various "dope fiends and druggies" and turned them into "snitches"

to whom he gave breaks.  Id. at 10.  Plaintiff informed Spence that he did not know any of his

"dope fiend snitches," that he did not hang out with such people and did not live in Woodland,

but in Dunnigan with his mother.  Id.  Plaintiff asked for the restraints, which were cutting into

his skin and causing abrasions, to be loosened, but defendant Spence refused.  Id.

Defendant Spence drove plaintiff across town to the Woodland Parole Office,

where an unnamed heavy set Latino parole officer called plaintiff degrading names, and along

with defendant Spence compelled plaintiff to sign a prepared statement which he did not have a

---

[8] At page 11, plaintiff describes the "detour" as taking an hour and a half.

1   chance to read.  AC, pp. 10-11.  In doing so, defendant Spence put pressure on and twisted the

2   handcuffs on plaintiff's wrists which were already in severe pain, after the parole officer told

3   Spence to uncuff one hand so that plaintiff could sign the prepared statement.  Id. at 11.  When

4   plaintiff protested being called a "piece of shit" and asked to be able to call his lawyer, both men

5   told him: "You don't have any fucking rights" and "to shut the fuck up about a lawyer.  You are

6   not getting one!"  Id.  Spence twisted plaintiff left wrist, while the parole office shoved a pen in

7   his hand and ordered plaintiff to sign the paper.  Id.

8           Plaintiff was then taken to the jail at the Monroe & Leinberger Detention Centers

9   of the Yolo County Sheriff's Dept. in Woodland.  Id.  When plaintiff showed defendant R.N.

10  Tony his "swollen red and purple wrists," requesting that he file  # 7219 medical report

11  documenting plaintiff's injuries, defendant Tony refused, telling him he would do nothing for

12  him.  Id.  Plaintiff suffered pain without receiving adequate medical care.  Id.

13          Defendant Sgt. Hunter told defendant Deputies Chan[9] and Gibson to remove

14  plaintiff's gold wedding band and 1 / 4 karat diamond "chip ear," and designer belt, for which

15  property plaintiff did not receive a receipt and of which he has been deprived without due

16  process.  AC, p. 12.  While plaintiff was being uncuffed and searched by the defendant deputies,

17  plaintiff asked defendant Hunter for a citizen's complaint form against law enforcement

18  personnel to complain about the alleged excessive force for which he claims a permanent injury

19  in his left hand middle finger, but Hunter stated that she could not find the forms.  Id.  In

20  retaliation for plaintiff's having asked to file a complaint, defendants Chan and Gibson put

21  plaintiff in a small holding cell by himself.  Id.

22          Defendants Hunter, Duvall, Chan, Gibson and Jamolodin, also in retaliation,

23  deprived plaintiff of lunch and dinner, while feeding other detainees in the jail booking area,

24  stating that they would mark down that they had fed him, and laughing at him, while taunting

25

26          [9] Although, as noted, plaintiff identifies this individual as "Chaud," defendants' counsel
    has corrected this spelling to "Chan."

1  him by saying he should write about it in his complaint, if he ever got one.  Id.  Plaintiff was kept

2  in the holding tank with no bedding or grooming implements from Dec. 11, 2006 to Dec. 12,

3  2006, and his booking was delayed for 13 hours after his arrest.  Id.

4          The delay in booking him resulted in plaintiff being deprived of his right to bail

5  and to be arraigned in 48 hours, to a speedy trial and to "fundamental, substantive and procedural

6  due process rights and equal protection of law under the 4th, 6th, 13th and 14th Amendments."  AC,

7  p. 13.  Plaintiff alleges that he was physically threatened by defendant Hunter and "her klan [sic]

8  of deputies" and subjected to further retaliation and punishment for three and a half months, from

9  the day of his Dec. 11, 2006 arrest until March 27, 2007, while he remained in the ad seg

10  (administrative segregation) unit without due process.  Id.

11  TRO/Preliminary Injunction

12              TRO Standard

13          The purpose in issuing a temporary restraining order is to preserve the status quo

14  pending a fuller hearing.  The cases contain limited discussion of the standards for issuing a

15  temporary restraining order due to the fact that very few such orders can be appealed prior to the

16  hearing on a preliminary injunction.  It is apparent, however, that requests for temporary

17  restraining orders which are not ex parte and without notice are governed by the same general

18  standards that govern the issuance of a preliminary injunction.  See New Motor Vehicle Bd. v.

19  Orrin W. Fox Co., 434 U.S. 1345, 1347 n.2 (1977) (Rehnquist, J.); Los Angeles Unified Sch.

20  Dist. v. United States Dist. Court, 650 F.2d 1004, 1008 (9th Cir. 1981) (Ferguson, J. dissenting);

21  Century Time Ltd. v. Interchron Ltd., 729 F. Supp. 366, 368 (S.D.N.Y. 1990).  In many cases the

22  emphasis of the court is directed to irreparable harm and the balance of hardships because the

23  merits of a controversy are often difficult to ascertain and adjudicate on short notice.

24              Preliminary Injunction Standard

25          The legal principles applicable to a request for injunctive relief are well established.

26  To prevail, the moving party must show either a likelihood of success on the merits and the

1    possibility of irreparable injury, or that serious questions are raised and the balance of hardships

2    tips sharply in the movant's favor.  See Coalition for Economic Equity v. Wilson, 122 F.3d 692,

3    700 (9th Cir. 1997); Oakland Tribune, Inc. v. Chronicle Publ'g Co., 762 F.2d 1374, 1376 (9th

4    Cir. 1985).  The two formulations represent two points on a sliding scale with the focal point

5    being the degree of irreparable injury shown.  Oakland Tribune, 762 F.2d at 1376.  "Under any

6    formulation of the test, plaintiff must demonstrate that there exists a significant threat of

7    irreparable injury."  Id.  In the absence of a significant showing of possible irreparable harm, the

8    court need not reach the issue of likelihood of success on the merits.  Id.

9            In cases brought by prisoners involving conditions of confinement, any

10   preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the

11   harm the court finds requires preliminary relief, and be the least intrusive means necessary to

12   correct the harm."  18 U.S.C. § 3626(a)(2).

13          PI Motion

14          Plaintiff, who is African American, has brought a motion for a TRO/preliminary

15   injunction, averring that for the past 12 months defendants have subjected him to racial

16   discrimination, inadequate medical care, punitive ad seg placement and retaliation.  Preliminary

17   Injunction (PI) Motion, pp. 1-2.  Plaintiff claims to have been deprived of ten hours a week of

18   exercise outside his cell as similarly situated white inmates/detainees are permitted.   Id. at 2.

19   Plaintiff alleges that he has been kept in solitary confinement for 12 months in an extremely

20   small cell without a reasonable amount of exercise which has resulted in his suffering permanent

21   damage to a bone spur deformity in his right foot, and that he has an infection which has not been

22   treated medically.  Id.  Plaintiff claims he has been placed in a contaminated cell with poor

23   ventilation, "causing eye irritation and breathing complications."  Id.  Plaintiff claims that he is

24   subjected to irreparable harm as a result of the violation of his Eighth Amendment rights and

25   seeks an order compelling defendants to "perform their preexisting duties" under the federal and

26   state constitutions and "state common law."  Id. at 2-3.  Plaintiff goes on to posit other

1     allegations, that defendants have devised a scheme to circumvent the rights of pretrial detainees

2     by precluding their reaching state and federal courts (id. at 7), a claim that, at least in the instant

3     case, the court is compelled to observe in light of plaintiff's voluminous filings does not appear

4     to adequately supported on the face of it.  Plaintiff claims that defendants keep stamped

5     envelopes sent from post offices, stores, vendors, family and friends from reaching him on

6     grounds of security concerns that are not justified.  Id. at 7-8.  Plaintiff claims that defendants

7     keep pretrial detainees from receiving two books of stamps a week, but refuse to sell U.S.

8     postage stamps at the commissary.  Id. at 8.  He alleges that defendants do not provide enough

9     "regular size (8x11) legal paper" or 5x12 envelopes.  Id.  Among the exhibits he attaches are no

10    less than six inmate grievances he has filed at Monroe/Leinberger Centers.

11           In opposition, defendants point out that plaintiff in alleging a lack of exercise fails

12    to identify the dates of the alleged deprivation and who denied him out-of-cell exercise time.

13    Opposition (Opp.), p. 3.  Defendants contend that plaintiff was provided exercise in compliance

14    with CAL. CODE REGS. tit.xv, § 1065,[10] which provides that there will be written procedures/policies

15    allowing a minimum of three hours of exercise over a seven day period.  Opp., pp. 3-4.

16    According to defendants, plaintiff was provided time outside his cell to exercise for "a minimum

17    of three times a week on a rotational basis, unless he had an appointment with the public

18    defender, the court or [] the jail was on lockdown."  Opp., p. 4, citing the declaration of non-

19    defendant Captain Larry Cecchettini[11] (Cecchettini Dec) ¶ 5.  The jail activity log, attached to the

20

21         [10] CAL. CODE REGS. tit.xv, § 1065: "(a) The facility administrator of a Type II or III facility
shall develop written policies and procedures for an exercise and recreation program, in an area
22    designed for recreation, which will allow a minimum of three hours of exercise distributed over a
period of seven days. Such regulations as are reasonable and necessary to protect the facility's
23    security and the inmates' welfare shall be included in such a program. In Type IV facilities, such
a program can be either in-house or provided through access to the community.
24    (b) The facility administrator of a Type I facility shall make table games and/or television
available to inmates."

25

26         [11] Captain and Commanding Officer of the Monroe Detention Center since February 25,
2007.  Cecchettini Dec, ¶ 1.

1   declaration as Exhibit A, shows that plaintiff was provided yard time at least 150 times during

2   the last year.  Id.  The lockdown periods are identified as having occurred for three days in

3   March, 2007, for about a week beginning on January 8, 2008, and for about four days beginning

4   on January 18, 2008.   Opp., n.2, Cecchettini Dec, ¶ 6.

5             Defendants concede that plaintiff has been in ad seg for much of the past year, but

6   aver that the placement has been as a result of his behavior and for his protection.  Opp, p. 4,

7   Cecchettini Dec, ¶ 7.  Captain Cecchettini declares under oath that, while at Monroe Detention

8   Center:

9             Plaintiff destroyed jail property including the television set
              provided for inmates to watch the superbowl.  Plaintiff has also
10            made threats verbally and physically to other inmates, including
              gang members, housed at the jail.  A search of plaintiff's cell in
11            January 2008 revealed plaintiff in possession of potential [sic]
              weapon, a sharpened pencil with a metal object protruding from
12            the eraser.  A recent search of plaintiff's cell by officers revealed
              plaintiff in possession of feces inside small [] milk containers,
13            known by the inmates as "shit-bombs."  These items are commonly
              placed by inmates in front of the cell doors of other inmates.  When
14            stomped on, feces is then shot into the cells of other inmates.  Due
              to the degrading nature of this item, as well as the potential
15            biohazard exposure, inmates consider this item one of the worst
              weapons that can be used in a jailhouse setting.  Inmates inside the
16            jail facility have filed complaints that plaintiff has used these
              devices toward them.  As a result of his behavior, plaintiff has been
17            housed in administrative segregation for his protection much of the
              past year.

18

19   Cecchettini Dec, ¶ 7.

20            Capt. Cecchettini goes on to aver that plaintiff, while in ad seg, has been

21   "provided a minimum of one hour of yard time to exercise every other day."  Cecchettini Dec, ¶

22   8, & Exhibit B, the "Monroe Detention Facility Disciplinary/Ad-Seg/Medical/Special Housing

23   Log" for plaintiff.  Defendants contend that plaintiff is unable to meet the objective and

24   subjective requirements for an Eighth Amendment violation on his allegation of a deprivation of

25   outside physical exercise, referencing Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970

26   (1994).  Opp., pp. 4-5.  Defendants also argue that plaintiff has failed to demonstrate that he is

1  subject to irreparable injury.  Opp., p. 5.

2            Plaintiff filed no reply.

3            Discussion

4            Plaintiff identifies himself as a pretrial detainee.  The Fourteenth Amendment, and

5  not the Eighth Amendment, applies to pretrial detainee cases.  Bell v. Wolfish, 441 U.S. 520, 535

6  n. 16, 99 S.Ct. 1861, 1872 (1979).  However, pretrial detainees' Fourteenth Amendment rights

7  are analogized to the rights of prisoners under the Eighth Amendment.  Redman v. County of San

8  Diego, 942 F.3d 1435, 1441-1445 (9th Cir. 1991) (en banc).

9            The deprivation of prisoners' outdoor exercise by prison officials can constitute

10 cruel and unusual punishment in violation of the Eighth Amendment.  Spain v. Procunier, 600

11 F.2d 189 (9th Cir. 1979) (upholding district court decision that inmates confined with almost

12 total lack of outdoor exercise for period of years was cruel and unusual punishment, and

13 requiring they be allowed one hour of outdoor exercise, five days a week, absent poor weather,

14 unusual circumstances).  "[S]ome form of regular outdoor exercise is extremely important to the

15 psychological and physical well being of the inmates."  Id. at 199.  The longterm deprivation of

16 outdoor exercise is a denial of a basic need in violation of the Eighth Amendment.  Allen v.

17 Sakai, 48 F.3d 1082, 1087-1088 (9th Cir. 1994); see also, Keenan v. Hall, 83 F.3d 1083, 1090

18 (9th Cir. 1996) (defendants not entitled to summary judgment where plaintiff produced evidence

19 showing deprivation of outdoor exercise for six-month period in administrative segregation).

20 Thus, regular outdoor exercise is necessary "unless inclement weather, unusual circumstances, or

21 disciplinary needs ma[k]e that impossible."  Spain, supra, at 199.  In Hayward v. Procunier, 629

22 F.2d 599, 603 (9th Cir. 1980), the Ninth Circuit found that the deprivation of outdoor exercise

23 and a five-month lockdown in response to a genuine emergency did not violate the Eighth

24 Amendment; however, plaintiffs therein "were allowed approximately the minimum exercise

25 mandated in Spain within a month after imposition of the lockdown."

26 \\\\\

1    Therefore, although a temporary denial of exercise does not per se constitute an

2    Eighth Amendment violation, denial of all outdoor exercise for an extended period may.  May v.

3    Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (temporary deprivation of 21 days without outdoor

4    exercise with no medical effects not a substantial deprivation); Hayward v. Procunier, 629 F.2d

5    599, 603 (9th Cir. 1980) (30-day emergency lockdown period was an unusual circumstance

6    justifying denial of outdoor exercise); see also LeMaire v. Maass, 12 F.3d 1444, 1457-1458 (9th

7    Cir. 1993) (while exercise is "one of the basic human necessities protected by the Eighth

8    Amendment," where restriction from outdoor exercise arose from inmate's abuse of the privilege

9    and posing a security risk, plaintiff's Eighth Amendment claim for deprivation thereof failed);

10   but see, Spain v. Procunier, supra, 600 F.2d at 199-200 (9th Cir. 1979).  The Ninth Circuit has

11   clarified the elements necessary to state a deprivation that would rise to the level of an Eighth

12   Amendment violation:

13            An Eighth Amendment claim that a prison official has deprived
              inmates of humane conditions must meet two requirements, one
14            objective and one subjective.  Allen v. Sakai, 48 F.3d 1082, 1087
              (9th Cir.1995). "Under the objective requirement, the prison
15            official's acts or omissions must deprive an inmate of the minimal
              civilized measure of life's necessities. The subjective requirement,
16            relating to the defendant's state of mind, requires deliberate
              indifference." Id. (citations omitted).

17

18   Lopez v. Smith, 203 F.3d 1122, 1132-1133 (9th Cir. 2000).

19            In Lopez, the Ninth Circuit found that plaintiff's claim that he was denied all

20   outdoor exercise for six and a half weeks met the objective requirement for an Eighth

21   Amendment claim.  1132-1133.  The Lopez court noted that:

22            The clear implication of May is that temporary denials of outdoor
              exercise must have adverse medical effects to meet the Eighth
23            Amendment test, while long-term deprivations are substantial
              regardless of effects.
24

25   Lopez v. Smith, 203 F.3d at 1133 n. 15 (see May v. Baldwin, supra).

26

1    Defendants are correct that plaintiff's conclusory and generalized allegations of a

2  deprivation of outdoor exercise are not sufficient to demonstrate that plaintiff is being subjected

3  to a violation of his rights under the Eighth Amendment.  After reviewing the exhibits submitted

4  in support of, and in opposition to the motion, it is clear that plaintiff has not met his burden to

5  show that he is under an imminent threat of irreparable harm.  His attached inmate grievances

6  raise the same issues set forth in his inadequate motion.  In one example, in response to

7  plaintiff's generic complaint about being deprived of, inter alia, access to showers,

8  grooming/hygiene supplies, and exercise, the third level review response was:

9              Mr. Turner– You are not being deprived of your rights and none of
            the detention staff is treating you inhumanely.  In fact, I am in
10            possession of 8 separate DFs, written by 6 separate officers,
            regarding your problem performance while in custody.

11

12  See Exhibit to PI Motion, p. 18.

13    Defendants' exhibits demonstrate that, taking the limited lockdown periods into

14  account, plaintiff has, indeed, generally had adequate opportunities to exercise, and also

15  demonstrates that it has been plaintiff who, on occasion, has refused to shower.  See Opp.,

16  Exhibits A & B to Cecchettini Dec.  As to plaintiff's various allegations concerning his medical

17  condition, poor cell ventilation and his mailing supplies, plaintiff simply provides inadequate

18  support for such claims and to meet his burden to show that he is under a threat of irreparable

19  harm.  Plaintiff's motion for a TRO/preliminary injunction will be denied.

20  Motions to Compel

21    Plaintiff purports to have brought four motions to compel discovery; no response

22  has been filed by defendants.  Any party has the right to discovery of "any matter, not privileged,

23  that is relevant to the claim or defense of any party...." ; thus, the scope of discovery under Fed.

24  R.Civ.P. 26(b)(1) is broad.  Discovery may be sought of relevant information not admissible at

25  trial "if the discovery appears reasonably calculated to lead to the discovery of admissible

26  evidence."  Id.  The court, however, may limit discovery if it "....is unreasonably cumulative or

1   duplicative," or can be obtained from another source "that is more convenient, less burdensome,

2   or less expensive; or if the party who seeks discovery "has had ample opportunity by discovery

3   ...to obtain the information sought"; or if the proposed discovery is overly burdensome.  Fed.

4   R.Civ.P. 26(b)(2)(i)(ii) and (iii).

5                    Motion to Compel, filed on 11/28/07

6            The court's review of this motion reveals that plaintiff has essentially set forth

7   requests for production of documents, seeking generally personnel/discovery records of the

8   defendants.  What plaintiff has failed to make clear is whether these requests were properly

9   served upon defendants and, if so, what if any response/documents defendants provided.  This

10  motion must be denied as defective.  See Discovery Order, filed on 11/19/07.

11                   Motion to Compel, filed on 12/20/07

12           In this motion, plaintiff once again fails to attach any discovery requests he has

13  served upon defendants to which he objects to their responses, or lack of same.  Plaintiff must

14  make clear that he has properly served discovery requests and must inform the court, once the

15  time for any responses has expired, that defendants have either failed to respond altogether, or

16  that he is dissatisfied with the responses and/or production and the basis therefore.  On the other

17  hand, if defendants have been served with discovery requests, they must respond as appropriate

18  within the guidelines of the Discovery Order, filed on 11/19/07.  In addition, defendants must not

19  fail to permit service of the requests via the U.S. Mail, which plaintiff appears to be indicating

20  might be occurring, although it is not entirely clear.  This motion will be denied without

21  prejudice to plaintiff's filing an adequately supported discovery motion, upon which defendants

22  must file a response.

23                   Motion to Compel, 2/ 4/08

24           By this motion, plaintiff appears to be asking the court to conduct an in camera

25  review of "all information that the defendants' attorneys will be using at the civil trial to 'defend'

26  the defendants...."  Plaintiff also seeks Pitches [sic] and Brady material.  A Pitchess motion, a

                                        14

1  vehicle by which a criminal defendant, under certain circumstances, may seek a peace officer's

2  personnel records may be appropriate only if brought by a defendant in the context of a state

3  criminal trial, not by a plaintiff in a federal civil rights action.  See, e.g., City of Santa Cruz v.

4  Municipal Court, 49 Cal.3d 74, 86, 260 Cal. Rptr. 520 (1989), citing Pitchess v. Superior Court,

5  11 Cal.3d 531, 537, 113 Cal. Rptr. 897 (1974).

6          As to his request, pursuant to Brady v. Maryland, 373 U.S. 83, 87, 83 S. Ct. 1194,

7  1197 (1963), wherein the U.S. Supreme Court held "that the suppression by the prosecution of

8  evidence favorable to an accused upon request violates due process where the evidence is

9  material either to guilt or to punishment, irrespective of the good faith or bad faith of the

10 prosecution," the motion is equally inapposite in the context of the present litigation.

11         Finally, to the extent plaintiff seeks otherwise to circumvent or short circuit the

12 federal civil discovery process by making a direct appeal to the court for material to be produced

13 to the court that is in the custody, control or possession of the defendants, without plaintiff

14 having first properly sought discovery, pursuant to the Discovery Order in this case, and the

15 applicable Local Rules and Federal Rules of Civil Procedure, the motion is also inappropriate.

16 This motion must be denied.

17                    Motion to Compel, filed on 2/15/08

18         In this motion, plaintiff asks the court to direct defendant Spence to produce his

19 personnel records, etc., directly to the court again circumvents the appropriate discovery

20 procedure and will be denied.

21 Conclusion

22         Plaintiff's serial filings constitute an abuse of process and are unfairly

23 burdensome to defendants as well as this court.  In future, plaintiff must await the court's ruling

24 on any motion he has pending before filing another, absent an emergency for which he

25 must show good cause.  This, of course, is in no way is intended to limit plaintiff's ability to

26 respond to any motion filed by the defendants.

1    Accordingly, IT IS ORDERED that:

2    1.  Although the show cause order, issued on 6/05/07 (#16), pursuant to the All

3    Writs Act, 28 U.S.C. § 1651(a), was not properly discharged, no sanctions will be imposed at this

4    time;

5    2.  Plaintiff's "petitions for writ of mandate/mandamus," filed by plaintiff on June

6    15, 2007 (#17), and on October 30, 2007 (#38), are disregarded as inappposite;

7    3.  Plaintiff's request for status report, filed on July 9, 2007 (# 20), is denied as

8    moot;

9    4.  Plaintiff's inapposite motion for "expansion of the record," filed on August 24,

10   2007 (#23), is denied;

11   5.  Plaintiff's request for production of documents, filed on August 29, 2007 (#

12   24), and his first set of interrogatories served on defendant Spence, filed on March 21, 2008

13   (#69), are disregarded;

14   6.  Plaintiff's motions for appointment of counsel, filed on October 23, 2007

15   (# 36), and on February 4, 2008 (# 60) are denied;

16   7.  Plaintiff's inapposite requests for entry of default, filed on November 9, 2007

17   (#41), and on November 12, 2007 (#42), as well as the putative petition for writ of habeas

18   corpus, filed on November 16, 2007 (#45), are disregarded;

19   8.  Plaintiff's inapposite and inadequately supported motion for a default

20   judgment, filed on November 26, 2007 (#46) is denied;

21   9.  Plaintiff's four motions to compel discovery, filed on November 28, 2007

22   (#49), on December 20, 2007 (#53), on February 4, 2008 (#59), and on February 15, 2008 (#63),

23   as set forth above, are denied.

24   10.  Plaintiff's requests for appointment of an investigator, filed on November 28,

25   2007 (#50), and on March 4, 2008(# 68), are denied;

26   \\\\\

1           11. Plaintiff's "motion for preliminary and/or permanent injunction and TRO,"

2    filed on January 28, 2008 (#55) is denied;

3           12.  While plaintiff remains without restriction to respond appropriately to any

4    motion by defendants, in future, plaintiff must not file any additional motion, while he has one

5    pending before the court, absent an emergency or exigent circumstances for which he must show

6    good cause.

7    DATED: 04/04/08                                    /s/ Gregory G. Hollows

8                                            GREGORY G. HOLLOWS
9                                            UNITED STATES MAGISTRATE JUDGE

GGH:009
10   turn0022.ord2

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26