IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANTHONY RICHARDO TURNER,

    Plaintiff,                    No. CIV S 07-0022 GGH P

    vs.

OFFICER SPENCE, et al.,         ORDER

    Defendants.

         Plaintiff, a state prisoner proceeding pro se,[1] seeks relief pursuant to 42 U.S.C. § 1983. Pending before the court are: 1) plaintiff's "petition for writ of mandamus to compel immediate discovery disclosures," filed on 7/15/08; 2) defendants' motion to compel discovery responses and for sanctions, filed on 9/05/08, to which plaintiff has filed an opposition after which defendants filed their reply; 3) plaintiff's "motion for default," filed on 7/21/08.

         This action proceeds on plaintiff's amended complaint, filed on 3/29/07, against the following defendants: Woodland Police Officer Luke A. Spence and the following Yolo County Sheriff's Department employees: Commander Ed Prieto; Lieutenant (Lt.) T. Day;

---

[1] At the commencement of this action, plaintiff, housed in the Monroe Detention Center in Woodland, CA, maintained that he was a pretrial detainee, however, by his most recent change of address to Deuel Vocational Institution (docket # 102, filed on 10/02/08), it appears that plaintiff now proceeds as a state prisoner.

1

Sergeant (Sgt.) D. Hunter; Deputy Chan;[2] Deputy Gibson; Correctional Lt. Rademaker;[3] Deputy Duvall; Deputy Madden;1 in addition, Registered Nurse (R.N.) Tony [Thomas].

This court has previously set forth plaintiff's allegations, as follows.

> Plaintiff alleges that on December 11, 2006, defendant Officer Spence subjected him to excessive force in arresting plaintiff, twisting plaintiff's wrists and left arm and slamming the left side of plaintiff's face into a concrete wall. Amended Complaint (AC), p. 8. Plaintiff claims that his circulation was cut off and his wrists went numb when he was handcuffed by defendant Spence. Id. Plaintiff avers that he was arrested without probable cause but as a result of racial profiling, that Spence threatened to taser plaintiff even after plaintiff informed Spence he was a "disabled cardiac patient." Id. According to plaintiff, defendant Spence called him "discriminatory names," and refused to read plaintiff his Miranda rights, claiming also that he was engaged in no unlawful conduct when arrested, nor did he resist arrest. Id. Plaintiff contends that Spence searched him without contacting plaintiff's parole agent and without plaintiff's consent, removing various items of personal property worth $1,020.00, including $120 in cash; two gift cards with a total value of $200; watches with a value of $400, and other items. AC, pp. 8-9. Plaintiff contends that defendant Spence, after dropping the items on the ground in the rain, scooped the items into a paper bag that plaintiff never saw again. Id. at 9. Plaintiff avers that he has been subjected to a deprivation of his property by defendant Spence without due process and that he was never given a receipt for the items. Id.
>
> Plaintiff claims that defendant Spence "unlawfully interrogated" plaintiff in the back of his patrol car for "1 / 2 hours [sic],"[4] as he drove around Woodland without taking plaintiff to the Woodland Police Station to be charged or booked, as plaintiff requested, and despite plaintiff's having refused to make a statement, and having asked to be able to make a call for his lawyer. AC, pp. 9-10. On the detour away from the police station, defendant Spence told plaintiff of having "busted" various "dope fiends and druggies" and turned them into "snitches" to whom he gave breaks. Id. at 10. Plaintiff informed Spence that he did not know any of his "dope fiend snitches," that he did not hang out with such people and did not live in Woodland, but in Dunnigan with his mother. Id.

---

[2] Originally erroneously sued as Deputy Chaud.

[3] Originally erroneously sued as Deputy Jamolodin.

[4] Footnote 8 in original Order: "At page 11, plaintiff describes the "detour" as taking an hour and a half."

2

Plaintiff asked for the restraints, which were cutting into his skin and causing abrasions, to be loosened, but defendant Spence refused. Id.

Defendant Spence drove plaintiff across town to the Woodland Parole Office, where an unnamed heavy set Latino parole officer called plaintiff degrading names, and along with defendant Spence compelled plaintiff to sign a prepared statement which he did not have a chance to read. AC, pp. 10-11. In doing so, defendant Spence put pressure on and twisted the handcuffs on plaintiff's wrists which were already in severe pain, after the parole officer told Spence to uncuff one hand so that plaintiff could sign the prepared statement. Id. at 11. When plaintiff protested being called a "piece of shit" and asked to be able to call his lawyer, both men told him: "You don't have any fucking rights" and "to shut the fuck up about a lawyer. You are not getting one!" Id. Spence twisted plaintiff['s] left wrist, while the parole office[r] shoved a pen in his hand and ordered plaintiff to sign the paper. Id.

Plaintiff was then taken to the jail at the Monroe & Leinberger Detention Centers of the Yolo County Sheriff's Dept. in Woodland. Id. When plaintiff showed defendant R.N. Tony his "swollen red and purple wrists," requesting that he file # 7219 medical report documenting plaintiff's injuries, defendant Tony refused, telling him he would do nothing for him. Id. Plaintiff suffered pain without receiving adequate medical care. Id.

Defendant Sgt. Hunter told defendant Deputies Chan[5] and Gibson to remove plaintiff's gold wedding band and 1 / 4 karat diamond "chip ear," and designer belt, for which property plaintiff did not receive a receipt and of which he has been deprived without due process. AC, p. 12. While plaintiff was being uncuffed and searched by the defendant deputies, plaintiff asked defendant Hunter for a citizen's complaint form against law enforcement personnel to complain about the alleged excessive force for which he claims a permanent injury in his left hand middle finger, but Hunter stated that she could not find the forms. Id. In retaliation for plaintiff's having asked to file a complaint, defendants Chan and Gibson put plaintiff in a small holding cell by himself. Id.

Defendants Hunter, Duvall, Chan, Gibson and Jamolodin, also in retaliation, deprived plaintiff of lunch and dinner, while feeding other detainees in the jail booking area, stating that they would mark down that they had fed him, and laughing at him, while taunting him by saying he should write about it in his complaint, if he ever got one. Id. Plaintiff was kept in the holding tank with no

---

[5] Footnote 9 in original <u>Order</u>: "Although, as noted, plaintiff identifies this individual as "Chaud," defendants' counsel has corrected this spelling to "Chan."

> bedding or grooming implements from Dec. 11, 2006 to Dec. 12, 2006, and his booking was delayed for 13 hours after his arrest. Id.
>
> The delay in booking him resulted in plaintiff being deprived of his right to bail and to be arraigned in 48 hours, to a speedy trial and to "fundamental, substantive and procedural due process rights and equal protection of law under the 4th, 6th, 13th and 14th Amendments." AC, p. 13. Plaintiff alleges that he was physically threatened by defendant Hunter and "her klan [sic] of deputies" and subjected to further retaliation and punishment for three and a half months, from the day of his Dec. 11, 2006 arrest until March 27, 2007, while he remained in the ad seg (administrative segregation) unit without due process. Id.

Order, filed on 4/04/08 (docket # 73), pp. 4-7.

"Petition for Writ of Mandamus"

This filing is a potpourri of requests, primarily, but defectively, directed toward compelling discovery from defendants. The scope of discovery under Fed. R. Civ. P. 26(b)(1) is broad. Discovery may be obtained as to any unprivileged matter "relevant to the claim or defense of any party...." Id. Discovery may be sought of relevant information not admissible at trial "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. The court, however, may limit discovery if it "....is unreasonably cumulative or duplicative," or can be obtained from another source "that is more convenient, less burdensome, or less expensive"; or if the party who seeks discovery "has had ample opportunity by discovery ...to obtain the information sought"; or if the proposed discovery is overly burdensome. Fed. R. Civ. P. 26(b)(2)(i)(ii) and (iii).

To the extent that plaintiff asks the court to compel discovery from defendants, he once again fails to identify and attach any specific discovery requests and the responses with which he takes issue. See Order, filed on 4/04/08, pp. 13-15, wherein the court, in adjudicating, inter alia, multiple putative motions to compel discovery brought by plaintiff, informed him of how to file an appropriate discovery motion. The basis of the instant motion appears to be his mistaken belief that he is entitled to initial or automatic disclosures by defendants even though the parties in this case are specifically exempted from such initial disclosure. See Fed. R. Civ. P.

4

26(a)(1)(B)(iv), which exempts parties from the requirement of initial discovery disclosure in "an action brought without an attorney by a person in the custody of the United States, a state, or a state subdivision."

Although defendants did not file a response to plaintiff's "petition" (perhaps because it was not entirely coherent and thus unclear if plaintiff had made a substantive request), defendants in their own motion to compel warrant that they have produced documents in response to plaintiff's requests for discovery, served upon them as of 5/08/08. See below. Of course, as the court cautioned in its Order, filed on 4/04/08, to the extent that plaintiff properly served discovery requests upon them that defendants failed altogether to address.

Plaintiff also asks that the court require the Sheriff's Department to provide him with "legal assistance, legal preparations, and legal copies, law library and law book curiculum [sic] and consortum [sic] as required by state and federal law...." Petition, p. 6. The court need not address whether or not plaintiff has provided a sufficient basis for his request because it will be denied as moot since plaintiff is no longer in the custody of the sheriff.

Defendants' Motion to Compel

Defendants move for an order, pursuant to Fed. Civ. P. Rule 37, compelling plaintiff's responses to interrogatories and requests for production which they aver were timely served on plaintiff, on 7/07/08, and to which he has altogether failed to respond. Motion to Compel (MTC), pp. 1-4, filed on 9/05/08; Declaration of Susan DeNardo, ¶¶, 3-4. In her declaration, counsel for defendants also avers that defendants had produced documents in response to plaintiff's 5/08/08 discovery requests on 5/27/08. DeNardo Dec., ¶ 5. Defendants seek imposition of sanctions upon plaintiff.

Plaintiff's response to the motion is largely a harangue against defendants for alleged failures in their own discovery disclosures, arising at least in part from plaintiff's misunderstanding of the application of the initial disclosure provision discussed above. He also segues into irrelevant claims with regard to service of process as well as referencing defective

5

prior motions on which the court has previously ruled. Opposition (Opp.), p. 2.

Plaintiff claims that the only discoverable material he has is that which defendants have produced to him and that he does not have adequate access to the DVI law library, having been limited to three or four visits in a two-month period, or access to a copy machine. Plaintiff goes on to claim that some of his personal property has been lost or destroyed and some of his legal property is missing, seeking to turn defendants' motion on its head by ascribing the deficiencies of his response to defendants' alleged misconduct. Opp., pp. 2-6.

As defendants point out in reply, plaintiff does not deny receipt of the discovery requests served upon him, nor does he in any way address why he has been unable altogether to respond to requests which defendants argue seek factual information which is or should be known to plaintiff, rather than requiring access to legal material for a response. Reply, pp. 1-3.

Plaintiff, if he has not yet done so, must respond to defendants' discovery requests forthwith and may not interpose objections, the time for doing so having long since expired. Plaintiff must serve discovery responses upon defendants and file in this court, within thirty days, proof of having done so (but plaintiff is directed not to file the discovery responses themselves with the court, just proof of service of having served defendants with the responses.) Should plaintiff fail to comply with this order, this court may impose the terminating sanction of dismissal of this case. See Fed. R. Civ. P. 41(b); Local Rule 11-110.

Motion for Default

Plaintiff has asked for an entry of default as to defendant Tony Thomas, and also for Rule 11 sanctions to be imposed upon defendants for bad faith in providing the court with false information as to the whereabouts of defendant Thomas, who remains unserved. See Request, filed on 7/21/08, pp. 3-4. He also faults defendants for providing what he calls false information as to the identity of the defendant now identified as Rademaker, whom plaintiff had previously identifed as Jamolodin.

\\\\\

1                  In an order, filed on 4/04/08 (docket # 72),[6] defendants were directed, inter alia, to locate, if possible, the business address for unserved defendants identified as "Nurse Tony" and Jamolodin. In an order, filed on 5/08/08 (# 79), the court noted that defendants had subsequently provided an address at which "Nurse Tony," identified as Tony Thomas, could be served, and although unable to locate anyone named Jamolodin, tentatively and reluctantly suggested the correct name of this defendant might be Oldham. However, it was noted that plaintiff had since been adamant in identifying this individual as J. Rademaker, and the court directed service upon defendant Rademaker, for whom an executed waiver was subsequently filed. See, Order, filed on 6/03/08 (#82), and filing dated 8/14/08 (#93).

                 However, when the court directed the U.S. Marshal to request a waiver of service from defendant Thomas at the address identified by defendants (which plaintiff had filled in on the proper USM-285 form) in the same order, filed on 6/03/08 (# 82), the waiver of service was returned unexecuted. See filing of 6/24/08 (# 85). By order, filed on 7/15/08 (# 87), the court directed defendants' counsel to ascertain why the address provided by defendants had proved inadequate for a waiver of service to be executed for defendant Tony Thomas. In a declaration, defendants' counsel made clear her understanding that defendant Thomas had not been employed through the Yolo County Sheriff's Dept. at the time of plaintiff's arrest, but had worked for an organization known as California Forensic Medical Group ("CFMG"), and could be reached through CFMG's litigation counsel, Jerry Varanini, even though no longer employed at CFMG. See Declaration of Susan DeNardo, filed on 7/22/08 (# 89). Although the previous summons returned unexecuted had been directed to defendant Thomas at Mr. Varanini's office, the court again directed that the U.S. Marshal to serve the summons and complaint on Thomas, as counsel suggested in the latest declaration, in care of Jerry Varanini, and at the specified address. Once again the summons has been returned unexecuted. See, filing dated 2/24/09 (# 104). The waiver

---

[6] Not the order referenced earlier, which was also filed on 4/04/08.

indicates that the U.S. Marshal unsuccessfully mailed the waiver on 8/11/08, and thereafter, apparently attempted personal service upon defendant Tony Thomas at his residence, at which point the apartment manager informed the process server that the defendant had moved out in 2006, after which the marshal's office was unable to locate defendant Thomas.

This court, prior to this case having been reassigned to the undersigned for all purposes, had recommended dismissal of defendant Thomas (then identified only as Tony), following plaintiff's failure to respond after the court had granted plaintiff sixty days to provide more information as to that party's location when the first unexecuted waiver for that defendant had been filed; those findings and recommendations were subsequently vacated based on plaintiff's objections. See Orders, filed 10/22/07 (# 34), on 4/04/08 (# 72).[7] It is plain that not only has plaintiff been permitted an extraordinary amount of time to locate this defendant but that the court has also placed the burden on counsel for defendants to locate defendant Thomas (an individual whom counsel or her law firm would evidently not be representing even if he were located), who appears to have made a good faith effort to do so; in addition, the court has directed the U.S. Marshal on multiple occasions to either obtain a waiver or effect service of process upon this defendant. Plaintiff has had ample notice that the court might have no further recourse than dismissal of this action as to this defendant, and, at this point, the undersigned will dismiss this action without prejudice as to defendant Tony Thomas, pursuant to Fed. R. Civ. 4(m).[8] Plaintiff's inapposite request for entry of a default judgment as to this unserved party and

---

[7] In the order clause portion of the Order at docket # 72, defendants are erroneously directed to pursue an inquiry as to defendant Spence's location, rather than that of defendant Tony, although in the next portion of the order clause, defendants are correctly directed to show cause why defendant Spence should not be found to be in default. In any event, within the order itself, it is clear that defendants have been directed to provide a location for, inter alia, defendant Tony, not defendant Spence. Moreover, defendants' response do not indicate any confusion on their part as to the requirements of that order. See Response, filed on 4/24/08 (docket # 76).

[8] Under Rule 4(m), the court must dismiss without prejudice an action as to a defendant, who has not been served within 120 days after a complaint has been filed "on motion or on its own after notice to the plaintiff" or specify a time for service to be effected; if "the plaintiff shows good cause for the failure, the court must extend the service for an appropriate period."

8

for the imposition of sanctions will be denied.

Accordingly, IT IS ORDERED that:

1. Plaintiff's "petition for writ of mandamus to compel immediate discovery disclosures," filed on 7/15/08 (docket # 88), is denied.

2. Defendants' motion to compel discovery responses and for sanctions, filed on 9/05/08 (# 99), is granted insofar as plaintiff must serve his responses to defendants' discovery requests without interposing objections, within thirty days, and must also file proof of having done so in this court within the same thirty-day period; however, the defendants' motion for sanctions is denied at this time, although plaintiff is cautioned that failure to comply with this order may lead to the terminating sanction of dismissal. See Fed. R. Civ. P. 41 (b); Local Rule 11-110.

3. Plaintiff's motion for entry of a judgment of default as to defendant Tony Thomas, filed on 7/21/08 (# 91), and for sanctions, is denied; rather, the action against this named defendant, who remains unserved after extensive efforts to locate him have been exhausted, is now dismissed as to him without prejudice, pursuant to Fed. R. Civ. P. 4(m).

DATED: 03/06/09

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:009
turn0022.mtc+

---

In this instance, the court has permitted plaintiff more than a year and a half, since the court first ordered service of the defendants (on 7/09/07 (# 19), to attempt to have service effected on defendant Thomas, and previously referenced the possibility of the application of Fed. R. Civ. P. 4(m) with regard to, inter alia, this defendant. See Order, filed on 5/08/09 (# 79).